AUSA Adam L. Goldman
713-567-9534

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
APR 13 2016
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Henry RIVERA-Santos, and | ) | Case No. |
| Fatima Isabel DUENAS-Roero | ) | |
| | ) | H 16-569 M |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 8, 2016__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324(a)(1)(A)(v) | Conspired to knowingly or in reckless disregard for the fact that aliens had come to, entered, or remained in the U.S. in violation of law, the defendants: <br> -- to transport, move, or attempt to transport or move, such aliens within the U.S. by means of transportation or otherwise, in furtherance of such violation of law; and <br> -- to conceal, harbor, or shield from detection, or attempt to conceal, harbor of shield from detection, such aliens within the U.S. in any place, including any place, including any building or any means of transportation. |

This criminal complaint is based on these facts:

See attached affidavit of U.S. Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent Jarrid L. Tealer.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jarrid L. Tealer, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/13/2016

_____
*Judge's signature*

City and state: Houston, Texas

Frances H. Stacy, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

**I, Jarrid L. Tealer, being first duly sworn, depose and state the following:**

1. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), as a Special Agent (SA) of Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) Department of Homeland Security (DHS), assigned to the Special Agent in Charge (SAC) Houston. I have been so employed since August, 2006. I am also a graduate of the Federal Law Enforcement Training Center at Glynco, Georgia, where I received training and experience in criminal investigations, including human smuggling investigations.

2. This affidavit is made in support of the Criminal Complaint against Henry RIVERA-SANTOS and Fatima Isabel DUENAS-ROMERO. The facts contained in this affidavit are based upon information of my own personal knowledge, observations and/or facts related to me by other agents of HSI and/or other law enforcement personnel involved in this investigation, including, but not limited to, the Harris County Sheriff's Office (HSCO). Because this affidavit is being submitted for the limited purpose of establishing probable cause for this arrest, the affidavit may not contain every fact known to me during the course of this investigation.

3. On April 8, 2016, at approximately 8:00 am, Homeland Security Investigations (HSI), Human Smuggling Group, Houston, Texas initiated an alien smuggling investigation of a suspected stash house located at 418 Branding Iron Lane, Houston, TX 77060, involving suspects Henry RIVERA-Santos and Fatima Isabel DUENAS-Romero. This investigation was based on a referral from HCSO.

4. According to HCSO, on April 7, 2016, at approximately 11:30 p.m., HCSO received an anonymous tip reporting an alleged load of new undocumented aliens (UDA) being transported to 418 Branding Iron Lane, Houston, TX 77060 within a grey Dodge Charger and a green vehicle of an unknown make and model. HCSO Deputies then began to conduct surveillance in the area of the abovementioned address. At approximately 4:00 a.m., HCSO Deputies observed at the suspect location a grey Dodge Charger with Texas license plate #XXX-XXXX parked out front curbside and a green Toyota Camry with Texas license plate #XXX-XXXX parked in the drive-way. HCSO Deputies then conducted a knock and talk and made contact with the resident, later identified as Fatima Isabel DUENAS-Romero. Verbal consent was obtained from DUENAS and a search the residence was conducted for suspected undocumented aliens. HCSO Deputies discovered a total of twelve (12) subjects within the residence including the property's renters, who were DUENAS and RIVERA. HCSO Deputies observed several individuals lying in bed undercovers, but these individuals were *fully clothed with their shoes on*. HCSO Deputies suspected the individuals in the bed had recently arrived at

1

the residence and that the property's renters DUENAS and RIVERA were attempting to harbor, conceal and shield them from detection. HCSO Deputies also believed that DUENAS and RIVERA were attempting to deceive authorities. HCSO Deputies obtained reasonable suspicion that DUENAS and RIVERA were involved in alien smuggling and secured the residence for further investigation. HCSO Deputies then contacted Homeland Security Investigation (HSI) for assistance in determining the immigration status of the individuals and in determining if any federal violations had been committed.

5. HSI Agents responded to the location and were briefed by HCSO Deputies regarding the incident. Agents began to conduct preliminary interviews of all occupants within the residence to determine immigration status. Agents discovered all subjects within the residence were in the United States illegally without being inspected or having received authorization from an immigration official. Agents identified the following subjects encountered within the residence:

   a. Henry RIVERA-Santos (Renter) – Honduras – A#087768049.

Immigration records checks revealed RIVERA was first ordered removed on December 14, 2009, and has been removed, excluded or deported on December 28, 2009, August 4, 2010, January 4, 2013, May 28, 2013 and February 18, 2016. Criminal records checks revealed he was convicted in Harris County, Texas for Unlawful Carrying a Weapon and Possession of a Controlled Substance. RIVERA had no legal status or right to be in the United States at the time encountered.

   b. Fatima Isabel DUENAS-Romero (Renter) – Honduras – A#206253196

Immigration records checks revealed that on October 4, 2013, DUENAS was issued a Notice to Appear and is currently in removal proceedings before an immigration judge.

   c. Roger NEPTALY-Duenas (Brother of RIVERA) – Honduras – A#208268944

Immigration records checks revealed that on May 29, 2015, NEPTALY was issued a Notice to Appear and is currently in removal proceedings before an immigration judge.

   d. Norma Argentina CASTRO-Lopez (Sister In Law of RIVERA) – Honduras – A#208742064

Immigration records checks revealed that on November 26, 2015, CASTRO was issued a Notice to Appear and is currently in asylum proceedings before an immigration judge.

      Miguel Angel BONILLA-Duenas (Brother of RIVERA) – Honduras – A#208762341

Immigration records checks revealed BONILLA was first ordered removed on January 26, 2016 and was removed on February 10, 2016. BONILLA had no legal status or right to be in the United States at the time encountered.

    e. Salvadora Maybeli DIAZ-Sanchez (unrelated) – Honduras – A#208299840

Immigration records checks revealed DIAZ had never been previously documented and is an alien who entered the United States without inspection at a place other than a designated port of entry. DIAZ had no legal status or right to be in the United States at the time encountered.

    f. Douglas Armando GODINEZ-Constantino (unrelated) – El Salvador – A#208266405

Immigration records checks revealed GODINEZ was first ordered removed on May 29, 2015, and was removed on February 5, 2016. GODINEZ had no legal status or right to be in the United States at the time encountered.

    g. MEAA-1998 (Juvenile) (unrelated) – El Salvador – A#208299838

Immigration records checks revealed that this juvenile had never been previously documented and is an alien who entered the United States without inspection at a place other than a designated port of entry. MEAA-1998 had no legal status or right to be in the United States at the time encountered.

    h. MSLM-2000 (Juvenile) (unrelated) – El Salvador – A#208299839

Immigration records checks revealed that this juvenile, who was under sixteen years of age, had never been previously documented and is an alien who entered the United States without inspection at a place other than a designated port of entry. MSLM-2000 had no legal status or right to be in the United States at the time encountered.

    i. RJDC-2012 (Juvenile) – Honduras

Immigration records checks revealed that this juvenile, who is the child of Norma CASTRO and Roger DUENAS, was issued a Notice to Appear on November 26, 2015. and is currently in removal proceedings before an immigration judge.

3

AAOD-2008 (Juvenile) – Honduras

Immigration records checks revealed that this juvenile, who is the child of Henry RIVERA and Fatima DUENAS, was issued a Notice to Appear on March 13, 2014. and is currently in removal proceedings before an immigration judge.

j. JDDR-2010 (Juvenile) – Honduras

Immigration records checks revealed that this juvenile, who is the child of Henry RIVERA and Fatima DUENAS, was issued a Notice to Appear on October 4, 2013, and is currently in removal proceedings before an immigration judge.

6. Agents arrested the following subjects for immigration violations for entering the U.S. without inspection: Henry RIVERA-Santos, Miguel Angel BONILLA-Duenas, Douglas Armando GODINEZ-Constantino, Salvadora Maybeli DIAZ-Sanchez, MEAA-1993, and MSLM-2000.

7. The following individuals were not arrested due to pending immigration proceedings: Fatima DUENAS, Roger NEPTALY, and Norma CASTRO. The following juveniles were left in the custody of their mothers: RJDC-2012, AAOD-2008, and JDDR-2010.

INTERVIEW OF FATIMA DUENAS (PRINCIPLE):

8. SA Garza identified himself to DUENAS as a Special Agent with the Department of Homeland Security. SA Garza read and explained to DUANES her Miranda Rights in the Spanish language. DUANES signed a voluntary waiver of her Miranda Rights and agreed to speak to SA Garza without an attorney present. SA Garza also requested consent from DUANES to search her phone and view photos, text messages, data, incoming and outgoing calls. DUANES voluntarily provided SA Garza with verbal and written consent (ICE Form 73-005S) for Agents to search her cellular phone (XXX-XXX-XXXX) and vehicle (green Toyota Camry TXLP# XXX-XXXX). SA Garza conducted a non-custodial interview with DUANES in the Spanish language and obtained the following statement:

9. DUENAS stated that on April 7, 2016, at approximately 6:00 pm, she was contacted by a human smuggler facilitator who asked her to pick up two (2) undocumented females in San Antonio, Texas, and to transport them to Houston, Texas. At approximately 8:30 pm, DUENAS and her cousin left Houston for San Antonio, Texas, in DUENAS' vehicle. The human smuggler facilitator directed her to Interstate 35, exit 143 or exit 144 to pick up the two (2) undocumented females from an unknown male. DUENAS picked up the two (2) undocumented females at a hotel off Interstate 35 and transported them to her residence located at 418 Branding Iron Lane, Houston, Texas. DUENAS was to receive a commercial advantage and private financial gain from this action by being paid

4

$400.00 by the human smuggling facilitator for the transportation of and harboring, concealing and shielding from detection, the two (2) undocumented females. DUENAS identified the two undocumented females as DIAZ and MEAA-1998. DUENAS indicated that the same human smuggling facilitator has utilized DUANES' bank account to deposit and withdraw human smuggling proceeds obtained from family members of the smuggled undocumented aliens. DUENAS stated the undocumented male juvenile (MSLM-2000) *was transported to her residence by two (2) human smugglers known only as "Manny" and "Dago,"* late in the evening of April 7, 2016 for the purpose of being harbored, concealed, and shielded from detection at that location. DUENAS stated her husband RIVERA and his brother Miguel was transported to Houston by a smuggler only known as "Alexander" or "Alexi". DUENAS admitted she allowed "Alexi" to utilize her Bank of America bank account to facilitate his smuggling efforts. "Alexi" deducted a total of $2,800 U.S. dollars from her bank account to pay RIVERA and BONILLA's smuggling fees. DUENAS advised that "Alexi" has continued to utilize her bank account to move illegal proceeds. DUENAS admitted on occasion "Alexi" has instructed her to withdraw money from the account and meet with other workers or smuggling associates to deliver payments for smuggling services.

10. The search of the green Toyota Camry resulted in the discovery of two (2) Bank of America transaction receipts which displayed the following information: (Receipt#1) Tran XXXXX, 04/06/2016, 13:04, Check Account XXXX, Withdrawal $3,000.00, Available Balance $3,801.32; and (Receipt#2) Tran XXXXX, 04/06/2016, 13:07, From Check Account XXXX, To Checking Account XXXX, Deposit $650.00.

11. The search of DUENAS cellular phone (XXX-XXX-XXXX) resulted in the discovery of the following contacts: #195 - Alexis +XXXXXXXXXXXXX; #201 – Alexis +XXXXXXXXXXXXX; #236 – Dago +XXXXXXXXXXX.

INTERVIEW OF HENRY RIVERA (PRINCIPLE):

12. U.S. Border Patrol Agent David Acosta identified himself to RIVERA as an Agent with the Department of Homeland Security. Agent Acosta requested consent from RIVERA to search his phone and view photos, text messages, data, incoming and outgoing calls. RIVERA voluntarily provided Agent Acosta with written consent (ICE Form 73-005S) for Agents to search his cellular phone (XXX-XXX-XXXX). SA Ricardo Garza and Andres Garcia conducted an interview with RIVERA in Spanish and obtained the following statement:

13. RIVERA stated his nickname is "Piturra". He that he met an individual who called himself "Manny" in Laredo, Texas, and that Manny transported him to San Antonio. RIVERA also stated he then met an individual named "Alexander" who stated that he would charge him $5,000 to smuggle him to the U.S. RIVERA claimed he told Alexander his wife would withdraw the money from her bank

5

account. Alexander then asked him to tell his wife Alexander would utilize their bank account to deposit and withdraw money. RIVERA's wife, who is DUENAS, accepted this arrangement and once RIVERA arrived in Houston approximately two (2) weeks earlier, he noticed that "Alexander" continued to utilize his wife's bank account. His wife would notice that money would be deposited in her bank account and then Alexander would call and tell them to withdraw the money and deliver it to unknown smuggling associates whom she observed them to be armed with firearms. RIVERA stated these armed males drove a gold Dodge Caravan. RIVERA also indicated that on occasion when Alexander deposited money into the bank account he (RIVERA) would then receive a call from phone number XXXXXXXXXXXXXXX and the unknown caller would instruct RIVERA where to deliver the money.

14. RIVERA admitted arriving at his home on 418 Branding Iron Lane, Houston, TX on April 7, 2016, at approximately 11:00 pm and observed two (2) unknown males (identified by HSI as Douglas GODINEZ and MSLM-2000) within his home. RIVERA asked the two (2) males why they were in his home and they explained to him that "Alexi" had an unknown male drop them off to be harbored, concealed and shielded from detection at that location. RIVERA was then advised by DUENAS that she had agreed with "Alexi" to pick-up two (2) females from San Antonio for a payment of $400. DUENAS was preparing to travel and RIVERA claimed he advised her not to do it.

15. The search of RIVERA's cellular phone (XXXXXXXXXX) resulted in the discovery of the following contact: #5 - Alexis XXXXXXXXXXXXXXXX.

INTERVIEW OF MATERIAL WITNESSES:

16. On April 12, 2016, SA Garza and Agent Acosta conducted an interview with Miguel BONILLA in Spanish. BONILLA stated his sister DUENAS paid smugglers $9,000 to have him smuggled from Honduras to Houston, TX. BONILLA alleged that DUENAS met him at a gas station in San Antonio and transported him, RIVERA, GONZALEZ, DIAZ, MSLM-2000, and MEAA-1998 to Houston. BONILLA stated they arrived in Houston on April 8, 2016, at approximately 3:00 am.

17. On April 8, 2016, SA Garcia and Tealer conducted an interview with Salvadora DIAZ in Spanish. DIAZ stated her sister Noemi SANCHEZ paid smugglers $9,000 to have DIAZ smuggled from Honduras to Maryland. DIAZ was kidnapped in Nuevo Laredo and her sister was extorted for an additional $5,000. DIAZ stated once they arrived in San Antonio they were picked up by two Hispanic females and driven to Houston. They arrived at a home in Houston at approximately 4:30 am; about thirty (30) minutes before the police arrived. DIAZ stated only one of the female drivers was at the home when police arrived. DIAZ was shown a photo-line up and selected photo #6 as the driver, identified by HSI as Fatima DUENAS.

18. Agent Acosta and SA Lobdell conducted an interview with MSLM-2000 in Spanish. MSLM stated his family paid smugglers $8,000 to have MSLM transported from Honduras to Houston, TX. MSLM claimed he was driven to the house by the husband. MSLM stated he was provided food a lady. MSLM was shown a photo line-up and selected photo #6, as the lady who provided him food, and identified by HSI as Fatima DUENAS. MSLM was shown a second photo line-up and selected photo #2 as the driver, identified by HSI as Henry RIVERA.

19. Agent Acosta and SA Lobdell conducted an interview with Douglas GODINEZ in Spanish. GODINEZ stated he received a loan of $8,500 from a friend to pay smugglers for transportation from Honduras to Virginia. GODINEZ still owes smugglers $500. He was driven by a lady from San Antonio to Houston. They arrived at the house at night and everyone was asleep. GODINEZ was shown a photo line-up and selected photo#6, as the driver, and identified by HSI as Fatima DUENAS.

20. SA Garza and Tealer conducted an interview with MEAA-1998 in Spanish. MEAA stated her brother paid smugglers $5,000 to have MEAA transported from El Salvador to Newark, New Jersey. MEAA stated her and DIAZ were placed in the cab of a tractor-trailer by a male known as "Alexi". The driver of the truck instructed them to stay quiet as they passed through the Border Patrol check point. The driver of the truck dropped off MEAA and DIAZ on a dark road and they were picked up by green car driven by a female called "Fatima" and an unknown female passenger. MEAA stated they were transported to Houston by "Fatima" and arrived at her house. MEAA claimed they were coached by "Fatima" to say they asked for a ride and that "Fatima" picked up her husband. While at the house in Houston, MEAA stated that she did not believe she was free to leave the location. MEAA was shown a photo-line up and selected photo #6 as the driver, and identified by HSI as Fatima DUENAS.

21. No exculpatory statements were made during the interviews. RIVERA and DUENAS were aware of the fact they had entered and remained in the United States in violation of law.

22. Based on my experience and the aforementioned facts and observations, the affiant believes there is probable cause to believe that on or about April 7, 2016, HENRY RIVERA-SANTOS and FATIMA ISABEL DUENAS-ROMERO did conspire to transport, conceal, harbor and shield from detection aliens that had entered and/or remained in the United States after entering at a place other than a designated port of entry or place other than as designated by the Commissioner in violation of Title 8, United States Code, Sections 1324, and that they did so for commercial advantage and private financial gain.

Signed and sworn to before me this _____ day of April, 2016.

_____
Jarrid L. Tealer, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me and I find probable cause on this 13th day of April, 2016.

_____
THE HONORABLE FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE